## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **Daniel Warren Stromp-Perez**<br>*Plaintiff*<br>*v.*<br>**Medtronic Puerto Rico Operations Co. d/b/a Medtronic**<br>*Defendant* | CIVIL ACTION<br>Case No. 3:17-cv-2184<br>Employment Discrimination<br>• GENDER/SEX<br>• DISABILITY(ADA)<br>• AGE(ADEA)<br>• RETALIATION<br>• VETERAN (USERRA)<br>*Demand for Jury Trial* |

### COMPLAINT

### INTRODUCTION

1.     Plaintiff Daniel Warren Stromp-Perez ("Stromp"), a disabled veteran and member of the Puerto Rico National Guard, brings this civil action pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Uniform Services Employment and Reemployment Rights Act, to remedy acts of employment discrimination perpetrated against him. Plaintiff contends unlawful acts of discrimination, because of his military service, gender, disability, age and protected EEO activity, were perpetrated against him by defendant Medtronic Puerto Rico Operations Co. (Hereinafter "Defendant") which led to his involuntary separation from employment on September 27, 2016, when his Supervisor placed him on an *unpaid indefinite* work suspension by using a single incident as *pretext* to discriminate.

2.     Any concerns for the working relationship of Stromp and his coworker Rodriguez, Medtronic alleges now to justify taking such extreme disciplinary action, is *pretextual* and *false*. Medtronic used uncorroborated homophobic comments supposedly made by Stromp in *response* to Rodriguez' verbal insults during a short-lived incident that occurred on September 24, 2016. Yet Medtronic failed to take immediate action until three days later, September 27, 2016, and only selectively against Stromp. By then both Stromp and Rodriguez had worked together on September 26, 2016, without further incidents. Their differences didn't justify Stromp's exclusion from work.

1

3.     Plaintiff was subjected to workplace discrimination and a dysfunctional hostile working environment, because Supervisor Lisandra Rosario Zayas, presumably a LBGT member like his coworker Jose Rodriguez, selectively took adverse action against Stromp, while similarly situated employees (non-military, under 40 years old and females) were treated more favorably by her. Plaintiff was subjected to discrimination because of his known or perceived mental disability. Lisandra Rosario often made public derogatory remarks about Stromp's mental illness, with remarks such as having a mental illness ward "*ahora tengo una sala de pacientes mentales*" and asking for Stromp to take his medication "*tendrás que tomar las pastillas de locos cuando ese muchacho venga por acá*" At some point in time, Stromp was denied a perfect attendance pay bonus because his supervisor used his military-service absences against, while she choose instead a female, similarly situated Kenia Ruffat Velazquez who had once taken a three (3) day suspension.

4.     Upon plaintiff's immediate work suspension on September 27, 2016, non-military and under protected age group Rodriguez was put by his supervisor to perform Stromp's tasks. Plaintiff who was fifty-eight (58) years old at the time, was *de facto* replaced the younger less experienced employee who had just falsely accused him of making remarks. Stromp was subjected to disparate treatment, and defendants unlawfully excluded him from work in violation of Federal and Puerto Rico's Antidiscrimination Laws. At all relevant times plaintiff Stromp was employed by defendant, at Medtronic's Juncos facility under direct supervision of his female Supervisor Lisandra Rosario Zayas. Defendants failed to treat the plaintiff in a non-discriminatory manner.

5.     Plaintiff respectfully asks the Court to find defendant in violation of Federal Antidiscrimination Laws, specifically Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Uniform Services Employment and Reemployment Rights Act and Puerto Rico laws, and to award the relief requested below.

6.     Defendant Medtronic violated plaintiff's rights under Federal and Puerto Rico law, and plaintiff seeks what is only deemed to be fair and just, his reinstatement, back pay and benefits, compensatory, punitive damages, and his attorney fees.

## JURISDICTION

7.      This Honorable Court has original jurisdiction over Plaintiff's federal claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), and pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §12101 et. seq., codified 42 U.S.C. §§12112-12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166), and Age Discrimination in Employment Act of 1967, as amended ("ADEA"), as codified 29 U.S.C. §§621-634 (amended in 1984, 1990, the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166), and the Uniformed Services Employment and Reemployment Act of 1994 (USERRA), 38 U.S.C. §4301-4335, as amended, and this Court may also exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (a) because those arise from the same nucleus of operative facts as Plaintiff's federal claims.

8.      Venue properly lies before this Court under 28 U.S.C. §1391(b) and 42 U.S.C. Section 2000e-5(f) (3), as plaintiff was employed in Puerto Rico. The plaintiff is a resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to Plaintiff's claim have occurred in this district. A substantial part of the events giving rise to this suit arose on defendant's premises, located in the Commonwealth of Puerto Rico.  Accordingly, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district.

9.      Prior to filing this lawsuit, plaintiff filed a timely written charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), where he notified defendant and charged Medtronic with discrimination based on his gender/sex, age and disability. The charge placed defendant on notice of his claims under Federal employment discrimination statutes. He received Notice of Right to Sue. **Exhibit I.**

## PARTIES

10.      Plaintiff Daniel Warren Stromp-Perez ("Stromp") is a citizen of Humacao, Puerto Rico and at all relevant times was employed by defendant in the Commonwealth of Puerto Rico.

3

At all times relevant to this suit, he was assigned to work at Medtronic Juncos facility and worked under direct supervision of defendant's female Supervisor Lisandra Rosario. He resides in the judicial District of Puerto Rico.  Plaintiff's mailing address is Urb. Miradero, 73-C Camino Las Vistas, Humacao, Puerto Rico 00791, with telephone number (787) 914-6213.

11.     Defendant Medtronic Puerto Rico Operations Co. d/b/a Medtronic ("Medtronic") is a *for-profit* foreign corporation registered with the Puerto Rico Department of State, registration no. 11897.  Its registered agent is CT Corporation System, with PO Box 2946, San Juan, PR 00903. Its designated person is Julius Claudio Figueroa with designated address Ceiba Norte Industrial Park, 50 Carr 31, Juncos, Puerto Rico 00777-3869. At all times, the plaintiff was supervised by defendant Medtronic, at its Juncos manufacturing facility.  At all relevant times, he worked under direct supervision of Lisandra Rosario, who treated him unfavorably because of his gender, military service and mental illness.  Medtronic was aware of unlawful conduct but failed to correct. Medtronic is also vicariously liable for plaintiff's supervisors' unlawful actions and omissions.

12.     Plaintiff reserves de right to amend this Complaint, if necessary, to include other employer's supervisors and/or entities that could be held vicariously liable for defendant's actions.

13.     Defendants are employees, agents, supervisory personnel and were, at all times material to this Complaint, acting in the course and scope of employment. Defendants participated in and/or directed the unlawful violations alleged herein, or knew of the violations and failed to act to prevent. All individual defendants are jointly liable for monetary damages alleged herein.

## FACTUAL ALLEGATIONS

14.     Plaintiff Stromp is a disabled veteran and member of Puerto Rico's National Guard.

15.     Between August 2005 and November 2006, Stromp served active duty in Iraq, and afterwards remain in the National Guard fulfilling his obligation which included attending to drills.

16.     Stromp began working for defendant at its Juncos facility during November 2008, as an Assembler.  Stromp worked for defendant Medtronic for approximately eight (8) years.

17.     By September 27, 2016, plaintiff had achieved the position of Team Member II.

4

18.     Stromp was qualified for his position and over the span of time of his employment, defendant Medtronic recognized thru performance evaluations, plaintiff always met expectations.

19.     Since commencement of Stromp's employment, defendant Medtronic was aware of his military background. At all relevant times, Medtronic was also aware of Stromp's physical and mental disability.  Stromp often notified Medtronic of his medical visits and work restrictions.

20.     Stromp's physical disabilities included back and cervical problems, with herniated disks. His mental disabilities included severe major depression, claustrophobia, psychosis, post-traumatic stress disorder and panic attacks. His condition required medication and psychiatric help.

21.     Medtronic was aware Stromp at some point, had suffered panic attacks at work. On or about 2013, his employer became aware Stromp's was undergoing psychiatric treatment.

22.     At some point during 2013, Stromp also requested reasonable accommodation from Medtronic because he was losing sight on his left eye. Medtronic was notified of his limitations.

23.     While working at Medtronic, Stromp often gave to his immediate supervisor and/or defendant's Human Resources office, his medical excuse/notes allowing him to return to work. Defendants were aware of plaintiff's ongoing medical treatment and his visits to a psychiatrist.

24.     He is an "individual with a disability" within the meaning of 29 U.S.C. §705(20) (A) and 42 U.S.C. §12102 (1).  Stromp had both physical and mental impairments that substantially limited major life activities which include his ability to communicate, see, lift, bend, stand, and work, he had a record of such impairments and was regarded as having impairment by defendants.

25.     At some point during 2013, plaintiff's Supervisor Lisandra Rosario began to harass Stromp by requesting military drill attendance documentation prior to attending his weekend drills, etc. She became hostile toward Stromp as he explained that he would obtain this at the drills, from his superiors. She didn't conceal discomfort with Stromp's service while working for Medtronic.

26.     At one time plaintiff's supervisor failed to recognized plaintiff's perfect attendance, while recognizing a female employee (who had been in a three-day suspension) instead, this

effectively denied Stromp his opportunity to obtain the same attendance *pay* bonus. Medtronic used plaintiff's military-service absences as basis to deny him the same opportunity for pay bonus.

27.     At one point his Supervisor asked more productivity from him than the female assembler coworkers. Stromp felt this action was discriminatory because of his gender, because a supervisor treated him differently than others similarly situated female employees. This was a violation of plaintiff's medical work restrictions and his reasonable accommodation.

28.      At some point during 2013, the plaintiff had a meeting with Human Resources to denounce his Supervisor for choosing two less qualified females to take the COS new production line certification he needed and he had asked for. He felt her action was discriminatory by gender.

29.     By September 27, 2016, the plaintiff was fifty-eight (58) years of age, and at all relevant times, Stromp belonged to a protected class because he was over forty (40) years of age.

30.     At all relevant times, the plaintiff reported and was supervised by Medtronic Supervisor Lisandra Rosario, who was in charge of the plaintiff's work area and his supervision.

31.     Stromp's supervisor was aware of his diagnosed mental illness, and often publicly ridicule and humiliated the plaintiff, by making derogatory remarks about having a "mental ward" and asking plaintiff specifically whether he had taken or should go take "his pills". Plaintiff could often hear her comment out loud "tengo un ward de psiquiatría aquí" making him uncomfortable.

32.     Defendants suspended Stromp indefinitely from work on September 27, 2016.

33.     Defendant's human resources representative Debbie Maldonado, placed Stromp in an unpaid indefinite work suspension on September 27, 2016.  Maldonado's justification for taking such adverse action exclusively *against* the plaintiff, was to "investigate" an alleged incident that supposedly involved Stromp and coworker Jose Rodriguez, a CTS temporary employee working for Medtronic. Both Jose Rodriguez and Stromp reported to supervisor Lisandra Rosario. Lisandra sided with Jose Rodriguez who was also a member of her LGBT community, and under Stromp's protected age group of employees. Stromp was falsely accused by Rodriguez of making alleged homophobic remarks. Jose Rodriguez allegations were malicious and false, only meant to smear

the plaintiff at the behest of Supervisor Lisandra Rosario. Stromp was never interviewed prior to his work suspension and was never notified of the outcome of Medtronic's alleged investigation. In spite of Debbie Maldonado acknowledging that Jose Rodriguez had not eyewitness which could corroborate his accusations of homophobic remarks by Stromp, human resources sided with the female Supervisor and took extreme action *selectively* against the plaintiff based on stereotypes.

34.   Comments on the work floor surfaced that Jose Rodriguez who is allegedly gay and Lisandra Rosario who is supposedly a lesbian, were often seen and photograph together at various social events. They both had a close relationship and Rosario was protecting her LGBT friend, by securing a permanent position at Medtronic for him and removing conservative minded employees. Employees could hear Jose Rodriguez comment in lunch break that he needed overtime. He was looking for a desperate opportunity to increase working hours and device a plan to remove Stromp.

35.   In essence, the word of a young temporary employee who had worked there for two months, was more convincing to Medtronic than Stromp's, a regular Medtronic employee who had worked for eight (8) years without a history of disciplinary problems and had served our country. The true basis for the extreme disciplinary action taken by Medtronic was plaintiff's prior military service and his mental disability, based on phobias, and stereotypes.

36.   Defendant's supervisor Lisandra Rosario sided with Rodriguez, and had plotted a way to involuntarily remove Stromp from work. Stromp and eyewitnesses confirmed Rodriguez yell "take me to human resources" "that's exactly what I want", during a misunderstanding between Stromp and Rodriguez, and some even witness Supervisor Rosario meeting with Human Resources to ask for Stromp's removal, *before* Stromp was interviewed by human resources. A fellow employee had just warned Stromp that he had seen his Supervisor meeting with HR to discuss his case and warned him to be careful because they were plotting a scam or "encerrona".

37.   Jose Rodriguez, who falsely accused Stromp, was not suspended and allowed to continue to work at Medtronic, performing Assembly position tasks formerly assigned to Stromp.

Whereas Stromp was unlawfully place in an unpaid indefinite work suspension for a single occurrence, without following defendant's progressive disciplinary steps and company policies.

38.     The employer's alleged reason for the unpaid indefinite work suspension was a *pretext* for age, gender and disability discrimination.  His supervisor sought and plotted with members of the opposite sex and LBGT to forcefully exclude the plaintiff because of his military service, mental illness and related stereotypes. Defendant Medtronic, was fully aware of Stromp's disabilities, yet treated Stromp less favorably and more severe because of his mental disability and previous military-service, based on unfounded fears, myths and stereotypes.

39.      Over the course of employment at Medtronic's facility, the plaintiff witnessed the hostile mistreatment and disparate treatment male coworkers had endure under the supervision of Lisandra Rosario. All the while, Supervisor Rosario was lenient towards female employees and submitted male employees, including the plaintiff to disparate treatment. Supervisor Rosario often treated plaintiff less favorably in the assignment of work than similarly situated female assemblers.

40.     Medtronic supervisors including Lisandra Rosario ridicule Stromp and stigmatize him, with derogatory comments because of his known or perceived mental illness, all the while, plaintiff had reason to believe his supervisor, a member of LGBT, was lenient towards his female coworkers and younger employees. She didn't ridicule them, and she treated Stromp differently. His supervisor's comments include having to deal with a physiatrist ward "hospital de locos" and asking publicly for plaintiff to take psychiatric pills "tomate la pastilla de loco".

41.     Upon notice of being placed by Medtronic in an unpaid indefinite work suspension the plaintiff had to seek immediate psychiatric treatment, and hospital care for the traumatic event.

42.     On September 28, 2016, plaintiff was hospitalized because of the psychological stress caused by Medtronic when he was unlawfully placed on unpaid indefinite work suspension.

43.     Supervisor Lisandra Rosario submitted the plaintiff to disparate treatment when she used a single incident as the basis (pretext) to take discriminatory action to seek the involuntary removal of Stromp from the workplace. The unpaid indefinite work suspension given to Stromp

constituted plaintiff's unlawful termination of employment. Plaintiff's supervisor engaged in Stromp's selective prosecution, while similarly situated female employees and a younger coworker outside of Stromp's protected age group, was not suspended nor terminated from employment.

44.     Plaintiff will also demonstrate that actions taken by Supervisor Rosario were intended to retaliate against Stromp, because he had previously complained *internally* with Human Resources about her, and during May 2016, Medtronic just learned he would testify on behalf of Domingo Rodriguez Velazquez, who had filed an EEO Charge 16H-2016-00366C against her. Domingo Rodriguez Velazquez was fired by Lisandra Rosario on February 29, 2016. Domingo had alleged Supervisor Lisandra Rodriguez discriminated against him because of his gender, while she was more lenient and treated similarly situated female employees more favorably.

45.     On at least two separate occasions, Stromp had complained to Medtronic's human resources office about supervisor's discriminatory actions. Medtronic failed to stop this.  Stromp's first internal complaint alleged his Supervisor had asked him to be more productive than his female counterparts, and Strom's second internal complaint alleged his Supervisor Rosario denied him an opportunity to obtain a necessary certification, when she gave that opportunity to two females.

46.     Medtronic actions created a hostile work environment and adversely affected plaintiff's mental health, requiring frequent visits to his physicians.  At all times, a copy of physician's Medical Notes were given to Medtronic.  In addition, plaintiff timely disclosed to Medtronic his issues with mental health and personal depression, and how demeaning conduct by his Supervisor on the basis of his military-service and mental disability, affected his health. Medtronic failed to take immediate action to stop discriminatory actions, which eventually escalated into a fabricated accusation, to involuntarily remove the plaintiff from the workplace.

47.     Defendant's supervisor Lisandra Rosario violated defendant's Attendance Policy which specifically states Medtronic will not interfere or restrict specific licenses given to its employees by federal and/or state law.

48.     Defendant violated Medtronic Company Policy on Sexual Harassment, as plaintiff complaints against his female supervisor were frequently brought to the attention of Human Resources and its personnel failed to identify and take immediate corrective action. Allowing his Supervisor to continue creating a hostile working environment and to retaliate. Said company policy was either ineffective or defendant employees failed to effectively apply it to this case.

49.     Defendant Medtronic violated Company Policy's prohibiting disability harassment.

50.     Defendant Medtronic failed to follow Company Policy on Progressive Discipline.

### Administrative Exhaustion

51.     Plaintiff filed an EEOC Complaint charging defendant with age, disability and gender discrimination. EEOC Charge No. 515-2017-00167.  On June 8, 2017, the EEOC issued a Notice of Right to Sue, upon request. Plaintiff has filed this civil action within 90 days of his receipt of Agency's notice. Accordingly, plaintiff has exhausted administrative remedies pursuant to 42 U.S.C. §2000e-5 and this Complaint is properly filed. The Plaintiff comes before this Court to seek what is deemed to be fair and just, thru reasonable compensation for damages as a result of his former employer's willful and malicious deprivation of his meaningful employment.

### CAUSES OF ACTIONS

### COUNT I: Employment Discrimination against Military/USERRA Violation

52.     The foregoing paragraphs are realleged and incorporated by reference herein.

53.     At all relevant times Stromp's supervisor created a hostile working environment and engaged in discriminatory conduct towards the plaintiff because of his military service.

54.     His employer intentionally adversely used Stromp's military-service absences from work to his detriment. At some point, his employer selectively denied recognizing his perfect attendance from work, to deny him work recognition which included a *financial* bonus. Defendant used his military-services absences as a pretext to deny him recognition and the bonus, while a female employee without military service who had been suspended from work, was given a bonus.

55.     At some point, his supervisor denied him the opportunity to complete his training for a final certification he needed to operate a new production line, while his supervisor instead selected two female employees who lacked other certifications, to complete the needed training. She selectively denied the plaintiff the opportunity to advance, in spite of his seniority and further compliance with other requirements to operate the new production line.

56.     At another time, Stromp's female supervisor quickly removed the plaintiff from the production line, in order to place a female employee in his same spot, just in time for company executives to tour the work area and for a photographer to take pictures of the new assembly line. His supervisor made it clear that she did not want Stromp there and put a less experienced female.

57.     At some point during 2014, plaintiff Stromp went to discuss how his supervisor had discriminated against him, with defendant's human resources Debbie Maldonado. Medtronic too no action and failed to protect the plaintiff from his supervisor's retaliation.

58.     Plaintiff Stromp has disabilities that were incurred in, or aggravated by his military service to our country.  Plaintiff's disabilities and his military service including the National Guard were known to his employer, defendant Medtronic. His service was protected by Federal laws.

59.     The Uniformed Service Employment and Reemployment Act (USERRA), 38 USC §4301 et. seq., and Title I of the Americans with Disabilities (ADA) both prohibit employment discrimination against disabled veterans, on the basis of disability. More importantly, USERRA prohibits employers from discrimination against an employee on the basis of his military obligations. USERRA applies to all veterans, not only those with service-connected disabilities, and to all employers. ADA also prohibits disability-based harassment and retaliation.  USERRA protects veterans, reservist and members of the Puerto Rico National Guard, such as Stromp.

60.     Medtronic hostile working environment towards the plaintiff, because of his military service and related disability constitutes a violation of USERRA. Plaintiff was frequently harass by his supervisor because of his participation in National Guard drills and his visits to VA hospital and physicians for ongoing medical treatments. She had disdain for his military obligation.

61.     Defendant violated USERRA by allowing workplace unlawful discrimination against the plaintiff because of his membership to uniformed services and past service. Defendants allowed plaintiff's supervisor to create a hostile working environment towards him because of his service and his disability. Defendant also violated USERRA when it unlawfully placed the plaintiff in an unpaid indefinite work suspension, refusing to promptly reinstate the plaintiff back to work.

62.     Plaintiff asserts his employer discriminated against him due to his military service and/or his military service was a motivating factor for his employer's adverse employment action.

63.     Defendants are jointly and severally liable.

### COUNT II: Gender Discrimination/Violation of Title VII of the Civil Right Act

64.     The foregoing paragraphs are realleged and incorporated by reference herein.

65.     Defendants' conduct as alleged at length herein constitutes discrimination based on *gender* in violation of Title VII. The stated reason for defendant's actions were not the true reasons, but instead were *pretext* to hide defendant's discriminatory *animus*.

66.     Plaintiff is not the only male employee to file complaints of unlawful gender discrimination directed towards males by their female supervisor Lisandra Rosario. Other male employees have complained to defendant's human resources about inappropriate unlawful conduct, taking place.  But the employer failed to protect the plaintiff from discriminatory conduct.

67.     The plaintiff was subjected to his female Supervisor's discriminatory conduct during his employment. This conduct was based upon and directed at plaintiff by reason of his *gender*. Although, the plaintiff notified management, which was otherwise aware of this, it failed to take appropriate action. The discriminatory conduct was severer and pervasive so as to unreasonably interferer with work performance and create a hostile work environment.

68.     Plaintiff suffered willful sex-based and/or gender discrimination in the workplace because he was treated unfavorably by the employers, because he was *not* a *woman*. As a result, he was treated less favorably than female counterparts during employer's selection of attendance bonus (with financial incentive), certification and company training (limiting advancement

opportunities) and was exposed to extreme disparate disciplinary procedures. Severe adverse action was taken against him by the employer because he did not conform to his female Supervisor's female employee stereotypes. Employer tolerated harassment.

69.     By exercising preference towards similarly situated female employees, so as to increase their probability of continued employment, over a male employee who was better qualified, defendants violated the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq.

70.     Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo"). It prohibits discrimination by the employer based on an employee's *gender*. 29 L.P.R.A. §146. Specifically, it prohibits employers from taking adverse action against an employee because of his sex, with regards to the terms and conditions of employment, refusing to keep or reincorporate employee into a job, willful deprivation of employment and/or taking adverse actions that negatively affect employment status. It also creates a *presumption*.

71.     Defendant failed to *timely* incorporate plaintiff Stromp back to work after an unpaid suspension. Female employees who had been suspended were often quickly returned back to work.

**COUNT III: Violation of the Americans with Disabilities Act (42 U.S.C. §12101 et. seq.)**

72.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

73.     The Americans with Disabilities Act, as amended, 42 U.S.C. §12101 et. seq., prohibits employers from discriminating against people with disabilities in employment, including failing to make reasonable accommodations to known limitations of otherwise qualified individuals with mental disabilities, unless the employer can demonstrate that the accommodation would impose an undue hardship.  The Americans with Disabilities Act of 1990, makes it illegal to discriminate against qualified persons with mental disabilities.

74.     Defendant knew or had reason to know of plaintiff's disability. His physical and mental disabilities affected his major life's activities, including communication, ability to stand,

bend, lift and work.  Plaintiff often had to take time off from work to visit his physicians and engage in psychiatric treatment, including partial hospitalizations.

75.     Stromp was able to perform essential functions of his job, was a qualified individual who had disability during the period in question and has also asked for reasonable accommodation.

76.     Defendant's supervisors directed derogatory remarks to the plaintiff, publicly ridiculing him in front of coworkers, exposing him to stereotypes, stigma and work-place harassment. Supervisor's comments included having to deal with a physiatrist ward "hospital de locos" and asking publicly for the plaintiff to take psychiatric pills "tomate la pastilla de locos".

77.     Defendant's Supervisor instead, asked Stromp to exceed productivity in violation of his medical work restrictions and the reasonable accommodation Medtronic was required to give to the plaintiff.  His supervisor made derogatory remarks about his mental illness by publicly asked for him to take his mental illness medications: "Tienes que tomarte la pastilla de loco esa" Plaintiff's supervisor actions created a very hostile work environment.

78.     Plaintiff Stromp suffered adverse employment action which includes Medtronic's decision to submit him to his unpaid indefinite work suspension on September 27, 2016. A discriminatory action motivated by his Supervisor's *prejudice*. Defendant's employer ignored or denied its duty to accommodate the plaintiff despite knowledge of his disability.  Plaintiff's claim satisfies elements for a claim of discrimination under ADA.

79.     Discrimination encompasses not only adverse actions motivated by prejudice, but also failing to make reasonable accommodation for a plaintiff's known disabilities.  See Taylor, 184 F. 3d at 311; 42 U.S.C. §12112 (b) (5) (A) (1994).  Plaintiff's employer denied him the opportunity to continue to work, in spite of being qualified to work and having met work expectations.  While another employee who was younger with no disability, was allowed to work.

80.     Defendant discriminated against the plaintiff on the basis of a perceived or actual *disability* and failed to reasonably accommodate plaintiff's disability, as required by ADA. Choosing to take adverse employment action, and proffered reason is a *pretext* for discrimination.

81.    Defendants are jointly and severally liable.

## COUNT IV: Violation of the Age Discrimination in Employment Act
## (29 U.S.C.A. §621 et. seq.)

82.    Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

83.    The Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C.A. §621et. seq., makes it illegal to discriminate against qualified persons at work because of their age. Plaintiff Stromp was approximately fifty-eight (58) years of age at the time of his work suspension.

84.    During plaintiff's unpaid indefinite work suspension, an employee who was much younger and with less experience, who was outside plaintiff's protected age group, was allowed to continue performing plaintiff's work. Defendant's reason for adverse employment action is a *pretext* to conceal supervisor's *animus* to engage in age discrimination.

85.    Defendant discriminated against the plaintiff on the basis of his *age*.

86.    Defendants are jointly and severally liable.

## COUNT V: Unlawful Retaliation

87.    The foregoing paragraphs are realleged and incorporated by reference herein.

88.    Defendant's conduct as alleged at length herein constitutes workplace retaliation because plaintiff engaged in activities protected by Title VII.  Specifically, the plaintiff was identified as *witness* for coworker Domingo Rodriguez Velazquez, who had previously filed his own EEOC charge against defendants, naming supervisor Lisandra Rosario.

89.    Defendant was also aware the plaintiff had already complained to human resources office about supervisor Lisandra Rosario's discriminatory conduct towards male employees, and specifically towards him, when he discussed the situation with human resources' Debbie Maldonado. Medtronic failed to put a stop and/or to prevent his supervisor's unlawful retaliation.

90.    Defendant Medtronic was fully aware at the time it took adverse employment action against Stromp, for a single occurrence without following progressive disciplinary steps, that he

was a witness for a pending EEO investigation and opposed unlawful workplace discriminatory practices, specifically from the same supervisor who selectively prosecute him to excluded him.

91.     The stated reason for defendant's conduct was not the true reason, but instead a *pretext* to hide defendant's retaliatory *animus*.  The Court will find that supervisors and Medtronic officials illegally retaliated against plaintiff by unjustly subjecting him to *unjust scrutiny*, *false allegations of misconduct* and an unpaid indefinite work suspension because he had opposed unlawful workplace practices and was willing to testify against the employer. Defendant's conduct constitutes a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. Title VII prohibits employers from discriminating against any employee on the basis of his gender and prohibits retaliation against an employee who asserts his rights under the law. Defendant's conduct violates statutory prohibition of employment retaliation. 29 USCA §215 (a) (3).

92.     In the present case, the Court will find that the plaintiff engaged in protected activity when he complained to Human Resources about his supervisor's discriminatory actions towards him and when he later participated in the EEOC investigation of workplace harassment commended by a male coworker, against his own female supervisor, *prior* to the employer initiating Stromp's selective prosecution which led to his involuntary work separation.  When the plaintiff was identified as witness against Medtronic, and his Supervisor was aware he would testify against her, she *chose* to plot a way to unlawfully exclude him from work, precisely using his mental illness to discriminate.

93.     The plaintiff will proffer direct and circumstantial evidence to show that employer's reason for his involuntary separation is *pretext* to hide employer's management retaliatory *animus*.

94.     Further, the plaintiff is entitled to *doubling* of his damages pursuant to Puerto Rico Act No. 115, 29 L.P.R.A. §194 et seq., in this particular case it is undisputed that the plaintiff was identified as a witness in EEO investigations of sex (gender) discrimination and retaliation with the Antidiscrimination Unit of the Commonwealth of Puerto Rico. As such, plaintiff's protected

activity, clearly fits within the scope of Act No. 115, *supra*.  This also includes his previous *internal* complaint against his supervisor, with Medtronic's human resources.

95.     Plaintiff is also entitled to a substantial award of *punitive damages*, as defendants engaged in retaliatory conduct with *malice* or *reckless indifference* to his protected rights.  Title VII authorizes punitive damages when a plaintiff demonstrates that the defendant engaged in *intentional* discrimination with malice or reckless indifference to the federally protected rights of an aggrieved individual.  See *Rodriguez-Torres*, 399 F. 3d at 64 (quoting 42 U.S.C. §1981a (b) (1)). See also *Kolstan v. American Dental Ass'n.*, 527 U.S. 526 [(1999)]

96.     The Court will find that prohibited retaliation is not limited to discriminatory actions affecting the terms and conditions of employment, but can also include an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." See *Burlington N. & S. F. R. Co. v. White*, 548 U.S. 52 (2006).  Placing the plaintiff in an unpaid indefinite work suspension was meant to dissuade any coworkers.

97.     Defendants are jointly and severally liable.

## COUNT VI: Violation of Commonwealth of Puerto Rico Laws

98.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

## Wrongful Termination/Constructive Discharge of Employment

99.     On September 27, 2016, defendant Medtronic placed Stromp in an unpaid indefinite work suspension. By December 29, 2016, the prolonged suspension exceeded ninety (90) days, constituting plaintiff's *de facto* involuntary termination of employment. At no point during that period did the employer notify the plaintiff of the outcome of the alleged investigation.

100.    Puerto Rico's Act No. 80, approved on May 30, 1976, as amended, prohibits employer's wrongful termination without *just cause* in the Commonwealth of Puerto Rico. 29 L.P.R.A. §185a. Defendant severely punished the plaintiff for a single occurrence of an alleged uncorroborated incident, failed to follow company's progressive discipline and failed to timely

notify Stromp about the outcome of the alleged investigation which led to a decision. The extreme action is a fabricated *pretext* to conceal supervisor's unlawful discriminatory animus because of Stromp's military service, his gender, his age and his mental disability.

101.   Defendant's conduct as alleged at length herein constitutes the wrongful termination of plaintiff's employment. In this case, the plaintiff will show with preponderance of evidence that other similarly situated female employees were not discharged from employment and plaintiff's supervisor was more lenient towards fellow female employees. A younger employee outside plaintiff's protected age group was allowed by Medtronic to continue performing plaintiff's job and was allowed to continue to work. While plaintiff was selectively targeted for persecution by his female supervisor because of his gender and his mental disability.

102.   Defendants also failed to follow employee handbook's disciplinary procedures.

103.   Puerto Rico's Act No. 80, approved on May 30, 1976, as amended, prohibits employer's wrongful termination without *just cause* in the Commonwealth of Puerto Rico. 29 L.P.R.A. §185a. The alleged justification for plaintiff unpaid indefinite work suspension fails to meet the justified standard, which is *repeated* or a *pattern* of employer regulation violations which could demonstrate disregard for company policies, and Courts have upheld that a single event should not trigger termination. No progressive discipline was given to Stromp and he was not timely allowed to return to his work. Medtronic constructively discharged him.

104.   Defendant constructively dismissed Stromp, by making his working conditions *intolerable*: His supervisor had publicly mocked his mental illness, allowed unfounded homophobia accusations against him, selectively disciplined him and maliciously placed him in an unjustified *indefinite unpaid* work suspension. Plaintiff's work environment was so adverse that any reasonable employee would have felt compelled to resign, Medtronic *intended* to force this.

## Age Discrimination

105.   Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo"). It

prohibits discrimination by employer based on an employee's age. 29 L.P.R.A. §146. Specifically, it prohibits employers from taking adverse action against an employee because of his *age*, with regards to the terms and conditions of her employment, refusing to keep or reincorporate employee into his job, willful deprivation of employment and/or taking adverse actions that negatively affect his employment status. It also creates a *presumption* against the employer. In this case, the plaintiff belonged to a protected class of employees over 40 years of age, he was qualified for his job, unlawfully deprived of his job and was replaced by a young person outside of his protected class.

106.     The same employee who brought false accusation of homophobia against Stromp, was allowed to substitute Stromp and perform his duties, while he was placed in a "suspension".

### Disability Discrimination

107.     Puerto Rico's Act No. 44, approved on July 2, 1985, as amended, best known as Puerto Rico's Employment Opportunity Act for Disabled Persons ("Ley de Prohibición de Discrimen contra Impedidos"), also prohibits discrimination on the basis of disability and requires employer to make reasonable accommodation. Act No. 44 specifically prohibits employers from limiting and/or excluding a person with disability from work based solely on his disability. Puerto Rico's Act No. 81, approved on July 27, 1996, ("Le de Igualdad de Empleo para Personas con Impedimentos"), also imposes a duty on the employer to make reasonable accommodation in the workplace. 29 L.P.R.A. §1401. In this case, his employer's supervisors subjected Stromp to a hostile working environment and disparate treatment, because of his known mental disability.

### Military Service Discrimination

108.     Plaintiff's supervisor Lisandra Rosario often harassed the plaintiff by asking him to produce his military-service license documents before he was to go on duty as a member of the national guard. She often complained about his military-service absences and treated the plaintiff in a discriminatory fashion by denying him work advancement opportunities. Non-military coworkers were treated more favorably by supervisor Lisandra Rosario. She made derogatory remarks toward members of the military, the plaintiff and conservative male stereotypes.

109.     Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo"). It prohibits discrimination by employer based on an employee's military service and veteran status. Specifically, it prohibits employers from taking adverse action against an employee because of his military service, with regards to the terms and conditions of his employment, refusing to keep or reincorporate employee into his job, willful deprivation of employment and/or taking adverse actions that negatively affect his employment status. It also creates a *presumption* against the employer.  In the above referenced case, the plaintiff belonged to a protected class of employees, a veteran with military service, he was qualified for his job, unlawfully deprived of his job and replaced by a person outside this protected class.

110.     Puerto Rico State law prohibits Medtronic from discriminating against Stromp on the basis of his military service.  Stromp was a known member of the Puerto Rico National Guard.

111.     Stromp is also entitled to *doubling* of his damages pursuant to Puerto Rico Act No. 100, 29 L.P.R.A. §146 et seq., as amended. Defendant was aware of plaintiff's military service since the moment he was hired, and by way of military-service license forms he gave to supervisor.

### Employment Retaliation

112.     Stromp is entitled to *doubling* of his damages pursuant to Puerto Rico Act No. 115, 29 L.P.R.A. §194 et seq.  Stromp was identified as witness in an investigation of sex (gender) discrimination and retaliation with the Antidiscrimination Unit of the Commonwealth of Puerto Rico. Stromp had also complained internally to defendant's Human Resources about his female supervisor discriminatory actions and his hostile working environment.  As such, plaintiff's protected activity, clearly fits within the scope of Act No. 115, *supra*.

113.     Defendants are jointly and severally liable.

### COUNT VII: Intentional Infliction of Emotional Distress

114.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

115.    Defendants intentionally and negligently inflicted *serious emotional distress* on the Plaintiff. Defendant's conduct, as alleged herein, make them liable under Article 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and §5142. Medtronic selective prosecution of the plaintiff, treating him differently than similarly situated female and younger employees, contributed to a hostile working environment. Defendant's actions and omissions, in violation of Federal and Puerto Rico Laws were tortious and caused mental distress, anguish, humiliation, and shame, which should be compensated. Defendant's conduct is the proximate cause of damages complained of herein, in this Supplemental Claim under Puerto Rico's Tort Statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court declares that Defendant's conduct was illegal and in violation of legal statutes herein identified, and that it grants Plaintiff the following remedies:

A. That this Honorable Court issues a Declaratory Judgment declaring that Defendant's actions and/or omissions violate applicable law.

B. That this Honorable Court award Plaintiff reinstatement, back pay, all loss benefits, front pay and other equitable relief.

C. That this Honorable Court enjoins Defendant from engaging in additional discrimination and retaliation against Plaintiff.

D. That this Honorable Court award ***compensatory and general damages*** in the amount of **$2,000,000.00** against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as a remedy for the mental and emotional distress and discomfort that Plaintiff suffered, as provided by laws of the United States and the Commonwealth.

E. That this Honorable Court award exemplary and ***punitive damages*** in the amount of **$3,000,000.00** against all Defendants sued in their individual and/or representative capacities, or an amount to be determined at trial, in light of Defendants' willful, wanton, and malicious acts with conscious disregard and indifference to his rights.

F. That this Honorable Court award Plaintiff his costs, expenses, and attorney's fees.

G. Pre-judgment interest; and as indicated above, the Plaintiff seeks *compensatory* damages, *statutory* damages, *punitive* damages, *injunctive relieve* and any other relief this Court deems equitable, just and appropriate.

## JURY DEMAND

Plaintiff respectfully requests a *jury trial* on all issues triable to a jury.

In San Juan, Puerto Rico, on this 6th. Day of September 2017.

Respectfully submitted,

/S/ Humberto Cobo-Estrella
Humberto Cobo-Estrella, Esq.
**USDC-PR230108**
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 529-7140
Email: *hcobo@hcounsel.com*

## CERTIFICATE OF SERVICE

I certify that on September 6, 2017, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system. Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing will be served upon all parties for whom counsel has not yet entered an appearance electronically.

/S/ Humberto Cobo-Estrella, Esq.
*Attorney for the Plaintiff*